**Huey Houston REEVES**

v.

**C. Murray HENDERSON, Warden,
Louisiana State Penitentiary.**

**No. 74–493.**

United States District Court,
W. D. Louisiana,
Shreveport Division.

Aug. 26, 1974.

James R. Malsch, Court-appointed Counsel, Shreveport, La., for petitioner.

John A. Richardson, Dist. Atty., First Judicial District, Shreveport, La., for respondent.

DAWKINS, Senior District Judge.

RULING

May 14, 1974, we directed the State, through its District Attorney for the First Judicial District Court, Caddo Parish, Louisiana, to file with us a certified copy of its complete record in this case, in accordance with 28 U.S.C. § 2254(e), (f).

That record, including the complete minutes of the State Trial Court, the bill of information and indictment against petitioner described more fully below, and the Court Reporter's transcript of the proceeding wherein petitioner pleaded guilty to attempted armed robbery, and murder, has been received. We thus are permitted to decide the

merits of this habeas application, based upon the record, which provides petitioner with the equivalent of a full and fair evidentiary hearing. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; James F. Dempsey v. Louie E. Wainwright, 471 F.2d 604 (5th Cir., 1973).

We also have received the State's response to the petition and a brief prepared by an Assistant District Attorney for Caddo Parish, as well as a brief by James R. Malsch, Esq., whom we appointed to represent petitioner in this proceeding pursuant to 18 U.S.C. § 3006A(g). Petitioner attached to his application copies of his applications showing that he has exhausted his State Court remedies by denials of his petitions for a writ of habeas corpus in the State District Court and the Louisiana Supreme Court.

From these records the following appears: On or about March 26, 1970, petitioner, and another individual, through a pretext (posing as police officers), gained entrance to the home of T. A. Bridges, in Caddo Parish, for the purpose of robbing Bridges of certain gold coins they believed he held in a safe situated in the dwelling. It developed, however, that Bridges did not have any such coins in his home, but in the course of the attempted robbery petitioner shot Bridges three times, causing his death. One of the shots was fired inside the home, and the other two were fired when Bridges chased the two robbers through his carport after they had exited the dwelling.

July 7, 1970, in proceedings before the State District Court, a bill of information was filed by the District Attorney charging petitioner with attempted armed robbery. He then entered a plea of guilty to that charge. Immediately thereafter, the District Attorney proceeded to arraign him upon an indictment for murder, to which petitioner also entered a plea of guilty.

The principal complaint petitioner now asserts is that he twice was placed in jeopardy in that he first was arraigned and pleaded guilty to the crime of attempted armed robbery, thereafter pleading guilty to the crime of murder, in violation of his rights under both the Fifth Amendment to the federal Constitution and the Louisiana constitutional proscription which is its State equivalent.

■ From our study of the entire State Court proceedings, particularly the stenographic transcript of the arraignments and guilty pleas entered July 7, 1970, we thoroughly are convinced that the plea of double jeopardy is valid. We have so concluded because the Louisiana statute defining murder, LSA–R.S. 14:30, which was in force in 1970 (it having been amended in 1973 by the Louisiana Legislature), provides:

"Murder is the killing of a human being,

"(1) When the offender has a specific intent to kill or to inflict great bodily harm; or

"(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated rape, armed robbery, or simple robbery, even though he has no intent to kill.

"Whoever commits the crime of murder shall be punished by death."

Clearly, when the State obtained petitioner's guilty plea to attempted armed robbery, the District Attorney intended to lay the basis for proof of petitioner's guilt under Paragraph (2) of the murder statute just quoted, i. e., felony-murder. In other words, he was avoiding the necessity of proving that petitioner had a specific intent to kill or to inflict great bodily harm upon Bridges.[1]

---

1. While Major J. K. Lanigan, of the Shreveport Police Department, was testifying before the State Court Judge regarding the circumstances of the attempted robbery and

March 25, 1974, in State ex rel. Wikberg v. Henderson, Warden, La., 292 So. 2d 505, a majority of the Louisiana Supreme Court, speaking through an opinion authored by Justice Calogero, granted an application for habeas corpus where Wikberg had entered a plea of guilty without capital punishment to the crime of murder, having been sentenced to life imprisonment; and thereafter had pleaded guilty to charges of attempted armed robbery arising out of the same incident. LSA–R.S. 14:64 and LSA–R.S. 14:27. There the Court said:

> "The 'same transaction' test was first enunciated by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). There, it was stated:
>
> > ' . . . where the same act or transaction constitutes a violation of two distinct statutory provisions . . . the test to be applied to determine whether there are two crimes, or only one is whether each provision requires proof of fact which the other does not.'
>
> "While the test has been applied by many state and federal courts, it was not applied by a majority of the members of the United States Supreme Court in the recent case of Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), despite its strong advocation by three members of that Court in a concurring opinion. 397 U.S. at 448, 90 S.Ct. at 1196. Nor has it been adopted by this Court, State v. Didier, *supra*. It has, however, been applied by the United States District Court for the Western District of Louisiana vacating a sentence previously upheld by a majority of the members of this Court. See Colle v. Henderson, 350 F.Supp. 1010 (W.D.La.1972). Cf. State ex rel. Colle v. Henderson, 262 La. 1172, 266 So.2d 449 (1972).

> "In actuality, the 'same transaction' test as applied does not vary extensively from the variation of the 'same evidence' test traditionally applied in Louisiana. That test holds that offenses are 'the same' if the elements required to support a conviction upon one of the offenses would have been sufficient to warrant a conviction upon another. See State v. Roberts, 152 La. 283, 93 So. 95 (1922); State v. Foster, 156 La. 891, 101 So. 255 (1924); State v. Schneller, 199 La. 811, 7 So.2d 66 (1942). Stated differently, where the gravamen of the second offense is essentially included within the offense for which first tried, the second prosecution is barred because of the former jeopardy. State v. Bonfanti, 262 La. 153, 262 So.2d 504 (1972); State v. Didier, 262 La. 364, 263 So.2d 322 (1972); State v. Richmond, 284 So.2d 317 (La.1973); State v. Pettle, 286 So.2d 625 (La.1973).

> "Applying this test to the facts of the case before us, we conclude that to convict the defendants for attempted armed robbery following their conviction for felony-murder arising out of the same incident violates the prohibition against double jeopardy. This holding is required because of. the nature of our felony-murder doctrine. *In a prosecution under paragraph two (2) of La.R.S. 14:30, the state is relieved of proving intent to kill or in-*

---

the shooting of Bridges, the District Judge interrupted him and the following colloquy ensued:

"THE COURT: Just a minute, Mr. Lanigan. Mr. Reeves, is it true that you went there with the intention to rob Mr. Bridges?

DEFENDANT: Yes, sir, but not with the intention to kill him.

THE COURT: Well, I understand that you did not go there initially with the in-

tention to kill him, but the killing occurred during the robbery, did it not?

DEFENDANT: Yes, sir.

THE COURT: You went there with the intention to rob him?

DEFENDANT: Yes, sir.

THE COURT: And you armed yourself beforehand?

DEFENDANT: Yes, sir."

*flict great bodily harm. This, in effect, deprives the defendant of several defenses which would be available in a prosecution for intentional murder. For example, a plea of accident, mistake and probably even self defense, is unavailing under the felony murder doctrine. The only requirements for conviction are the commission or attempted commission of the enumerated felony, and a resulting death.* See, e. g., State v. Ghoram, 290 So.2d 850, *La. decided Feb. 18, 1974.*

"It is therefore clear that, by definition, conduct which would not constitute the crime of murder under the first paragraph of R.S. 14:30 is punished as murder under the second paragraph of that statute. *As a result, a defendant convicted of felony-murder is in fact being punished for the felony which he was perpetrating when the death occurred. He is 'in jeopardy' (i. e., exposed to punishment) for the offense in the murder trial since conduct which at worst would render him guilty of · manslaughter, and which at best might be noncriminal is punished as murder due to the existence of the enumerated felony.*

*"Of course, an essential element of the state's proof of felony-murder is the commission or attempted perpetration of the enumerated felony. The Enumerated Felony Is Therefore A Different Grade Of The Same Offense (Or An Included Offense) For Double Jeopardy Purposes.* See C.Cr.P. Art. 596." 292 So.2d at pp. 508 and 509. (Emphasis and capitalization added. Footnotes omitted.)

It makes no difference, in our view, that here the factual situation is the reverse of that involved in *Wikberg,* where the habeas applicant first entered a plea of guilty to murder, and thereafter to attempted armed robbery. In each crime involved here, the necessary criminal intent arose from the "same evidence," *i. e.,* the intent to commit attempted armed robbery.

Finding further that petitioner's charge of ineffective counsel is without merit, we hereby grant his writ application to the extent, and only to the extent, of vacating his conviction and sentence to life imprisonment for the crime of felony-murder. His conviction and sentence to a term of forty-nine and one-half (49½) years for the crime of attempted armed robbery will be allowed to stand.[2]

---

2. This sentence under Louisiana law is "without benefit of parole, probation or suspension of sentence." LSA–R.S. 14–64(B).